Our next case we'll hear this morning is Metz v. McCarthy and Mr. Crone, whenever you're ready. Good morning. May it please the court. My name is Philip Crone. I'm here on behalf of the appellant plaintiff in this matter, Cheryl Metz. The matter before the court today involves Virginia state law claims that wound up in federal court on diversity jurisdiction. Specifically, the claim before the court today is a negligent repair claim under Virginia common law. On motion to dismiss, the court ruled in dismissing the case that entering a property for inspection is fundamentally distinct in nature from entering a property to repair. Can we start with the jurisdiction? Do we have jurisdiction? Yes, your honor, you do. Here, the court had an order dismissing the negligent repair claim. It allowed the breach of contract claim to move forward, at which point Ms. Metz decided she did not want to pursue the breach of contract claim any further. And we, under rule 41, took a voluntary dismissal as to that claim. The voluntary dismissal order does not include the term prejudice, which brings the issue, has brought the issue before the court now as to whether or not it is properly before the court. You have asserted in your brief, I think, or yeah, that you agree or stipulate that it was with prejudice. Yes. There's no intent, there's no intention of bringing this back. Can we agree that there's a stipulation that your dismissal was with prejudice? Yes, I believe under Jones, they considered that it was.  And again, so in dismissing the case, the court found that entering a property for inspection is fundamentally distinct in nature from entering a property to repair. And an inspection is the act of surveying and examining a potential issue to determine whether and to what degree a repair is needed. Inspecting is not the same as taking a positive act and conducting a repair. And that without any further actions to repair, a tenant cannot recover in the tort of negligent inspection. The issues before the court today are slightly intertwined. The first is that the court erred in holding that an inspection, which essentially turned into a term of art now, can never be the basis for a negligent repair claim. You don't even allege that the inspection, I'm not sure that's part of the repair. I guess it's preliminary to the repair. You have to decide what needs to be done and then write up a proposal and so forth. But even if you argue that inspection is part of the repair, you don't allege that the inspection was negligent. In other words, basically they came and looked at it and left and nothing further happened. But you never got a report of what the inspection said, what they concluded, and how they reacted pursuant to it. What I think Virginia gets at is if they undertake to repair it and do so negligently, a cause of action could arise. But absent a negligent repair, they fall back on the relationship of landlord-tenant. Yes, and to look at the way the Virginia Supreme Court has addressed the distinction for where you have a breach of contract claim and a tort claim, key part of that language which gets repeated throughout is that whenever it starts, it says, although a landlord does not have a common law duty to make repairs after delivering possession to the tenant, where the landlord enters lease premise for the purpose of making repairs, he must use reasonable care in performing that work. In your cause of action, they acted negligent. The repair was negligent. And so here, under the theory presented, is that once she entered with the contractor, she did so with the intention of making a repair. This wasn't a case where she's just inspectable, because it's not a case where she's just under her landlord, her lease, where the landlord says, hey, we're switching from summer to fall. I'm going to come in and do a fall inspection. She was notified of a problem. She made the decision to go bring in a contractor, go to the premises, go in and look. At that point, her decision, which is alleged, is that she decided she was going to start repairs to finish it after. How do you know that? In the complaint? Yeah. It's alleged that it was informed to the tenant by her property manager. What were they informed? That she was not going to finish any repairs until after the tenants had moved out. She didn't say finish repairs. They were going to address it, address everything. She was going to let the lease run out and take possession of the property and address the matters generally, including that. And had she not come to the house, I don't think I have an argument at all. I think that if there's a request that there's a problem in the house and that needs to be fixed, she receives it and she comes. She doesn't just come on her own. She brings a contractor. They look at it. At that point, she could have done other steps even at that point. Oh, I'm not going to address it now. I'm going to board it up. I'm going to tell you guys not to use this room anymore. There could be some steps. In the way the district court looked at it was that they said there needed to be some sort of positive act outside. And, again, relying on their definition that this was just an inspection. There had to be some act of repair. In other words, the idea is that there had to be an act of repair and it had to be done negligently. Yes. For you to have a cause of action. And then we get a little further into then looking at then the definition of repair because this court held. We just need to have an act of repair that was done negligently. We don't have an act of repair. Nobody even touched it, covered it, as you say, measured it. They just came and looked to see what the problem was. And that's starting. That's not repair. You can't start to repair something if you don't know what it is you're repairing. In Holland v. Shively, there's no repair done. They simply removed a step. And the court, that still went to trial. There was evidence. The court found that. They removed a step. Is removing a step repairing? That's the opposite of repair. It's destruction. It can be done negligently. It created an unsafe condition. They came in and changed the property, right? Correct. Removed the step. And here? They did nothing. They did nothing after they started to do something. Doing nothing would have been not responding, would have been saying, would have been immediately saying, I'm not going to deal with that. That's the contract aspect of this, is looking back at what Virginia has said. We don't have a contract before us. We have a negligence case. Exactly. And there is no duty to repair. Here, in the way the negligent repair case is looked at in the Supreme Court, they always talk about entering the premises. That's the first. When she comes to that house and enters and goes in to look at it, she's there to do repairs. She's not, you know, at that point, she didn't enter that house because of a scheduled inspection, like the district court creates this separation between the two. It's a separate, in a bright line rule. Counsel, since we're not in contract, what is it by coming to do the inspection that triggers the duty? And what is that duty? What is the fact that triggers the duty and what is the duty? So, by coming into the house after she's been put on notice, she's coming in there to start to, she's commenced the repair part. That's where, and once she starts doing that, she has to do so with reasonable care. Coming in through the threshold to look at it, that's what triggers the duty? And here, in addition to that, it's alleged that she didn't just come in by herself. She came in with a contractor. In the complaint, it's alleged that the contractor told her it was going to be a complex fix. And it's alleged in the complaint that the tenants were informed she wasn't going to complete anything on it until they left. When she started. Because he said it was complex, she decided not to repair it. If it had been simple, she might have undertaken repair. But she clearly undertook not to make a repair. But she had started. So the question becomes is, was it reasonable for her to do that? Because she had already started. The court, district court short-circuited litigation by looking at it in favor of the defendant and saying, I think that these facts show an inspection and it didn't cross the threshold into what a repair started. It has to be undertaking a repair and doing it negligently. And the question here, and causing you damage, there was no change made to that skylight. There was no repair made. It leaked before they came and it leaked after they came. And so there was no repair done and nothing was done negligently. They decided not to repair it. You have to claim that they undertook to repair it and did so negligently. And based on Virginia law, when she went to the house to investigate and start looking, she had started that repair. And it's a question of fact for a jury to decide if that's what happened when it did. But there's nothing done. In other words, negligence requires not only the actual undertaking a repair and doing it carelessly, but it caused injury. And there was no injury caused as a result. Injury is an element of negligence. And there was no injury caused by looking at it. You're saying that's a repair.  There's no missing. Coming in and looking at it is the injury. And the fact is it leaked before they came and it leaked after they left, and it was not changed by reason of their looking at it. Leaking involves more than one thing. It involves moisture, which obviously can lead to mold and mildew and other health issues. That was the preexisting condition. There was no repair. And then what injured her was when water pooled from a storm and she slipped on it. And there was nothing looking at the other cases where there was some sort of either demolition done or plywood put up, a cinder block put down. In some of those cases, I believe it's Holland v. Shively, they're moving tenants from one house to another because of the conditions. Here there's nothing. Negligence is not just a positive act. It's also the omission. Was it reasonable for her to, after learning that there was a repair? There's no duty to repair. Virginia says there's no duty to repair unless you undertake a repair and do so negligently. And she undertook when she went and entered the premises. She could have responded by saying that I'm not going to do it or I'm ignoring it, and there's nothing I can say to that. Are there any Virginia cases that find entering a premises with a contractor, inspecting damage but not undertaking any positive steps toward repair constitute an act toward the repair? There is no case law. And here there's not any really Virginia case law that would make the distinction about the inspection versus the repair as the district court's opinion does. It sounds to me like you alleged in the complaint that the inspection resulted in the decision not to repair because it was too complex. You quoted the guy saying what race to fix it would be complex, right? It resulted in the timeline that she decided to finish it. No, but isn't that what you quoted the congressman? Yes, the contractor said it would be complex. Again, the contractor doesn't have any duties. He doesn't know what he was hired for. But here deciding a timeline is part of repair. Businesses all the time create project management plans. They set timelines for when things are going to be done. Once they've started doing that, they've started the project, even if something's not going to be completed for another few weeks. Here the allegation is doing nothing in that time, doing it at a finishing it at a later time. That is what we're asking a jury to be able to hear to determine if they believe that was negligence. I'm going to reserve the remainder of my time.  All right. Mr. Trivette. Thank you, Your Honors. Ed Trivette on behalf of the defendant, Lori McCarthy. Your Honor, I think have we dispensed with the jurisdictional issue? If so, that helps. As I understand it, he stipulated that his dismissal was with prejudice, and I think that would bind him on not being able to refile his contract case. And if that's so, then we would have jurisdiction, wouldn't we? Yes, Your Honor. As long as that stipulation is binding, that's what my reading of the case law would indicate. So, Your Honor, with respect to the merits of the underlying decision, I think Your Honor's brought up a number of good points. And frankly, the timeline basically dictates, based on the allegations of the complaint, what was going on here. The plaintiff, her son, plaintiff and her son, live there. They advise the league in March of 21. In June of 21, the contractor comes out with Ms. McCarthy, indicates it's a complex fix. No action is undertaken at that time. No action is undertaken, in fact, for the entire rest of the tenancy of the Mets' in that house. All the way into January of 2022, according to the allegations of the plaintiff's complaint, the skylight remained unrepaired. That's paragraph 17 of the complaint. There was no repair made. And then, basically at the same time, Your Honor indicated, McCarthy indicates she's going to move back into the house and she will address the issues that the Mets' son had raised before they become bigger problems after she's taken back possession of the property. There was no affirmative step to engage in repair. The only action that is alleged in the complaint is that the inspection occurred. There is also no allegation that the inspection was done improperly. The only affirmative act being inspection and there not being any negligence attaching to the inspection itself, there is no allegation in this complaint of negligence by my client. I think plaintiff's counsel stated it accurately when he said, you can't start to repair if you don't know what to repair. That's all they were doing. They were going there to see what the issue was. It could be condensation. It could be a leak. It could be something totally unrelated to the skylight just nearby. They were going there to figure it out. And that's all they did. Your Honor, the- What else do you have? What's that? What else do you have? Your Honor, I think Your Honor has hit upon the case law going all the way back to Oden v. South Norfolk, and then more recently the Stewart v. Holland family case squarely on point. The common law duty actually rests with the tenant once the premises are demised to them, not with the landlord to conduct the repairs. It's only if they engage in the repairs and do them negligently that there is any duty there. The only other issue that I think was not really addressed, although we brought it up on the demur, was that the plaintiff was in control of this premises, and what she slipped on was a wet floor. Any wet floor in that house would have been her responsibility, her and her sons, to ameliorate. If any other person, any stranger to this process, not the landlord, not the tenant, if anybody else had come in there and slipped on a wet floor in the kitchen, it would be the responsibility of the tenant for failing to remedy that. Here, the plaintiff was responsible for remedying whatever condition was existing on the floor. We argued previously that she was barred by contributory negligence as a matter of law as well. Unless your honors have any questions for me. All right. Thank you. Thank you. Mr. Kronk. Thank you. To not belabor the points already made, I did just want to touch. The Virginia model jury instruction says a landlord who undertakes to make repairs has a duty to the tenant to use reasonable care in making them. Again, looking at the undertakes to make repairs, it's that they're putting oneself under the obligation to perform. Here, going back, and I've said it again and I'm going to say it one more time, entering the premises is what shifts this over from breach of contract to tort. She enters the premises, she's started the process, and now it's a question for a finder of fact to determine, no, there's absolutely nothing negligent with coming in, looking at it, and then waiting to do something. If that's the case, that's the case, and a jury finds against. It might find. For those reasons, we'd ask that the court reverse the motion to dismiss and remain in this case for further proceedings. Thank you. Thank you. We'll come down to Greek Council and proceed on to the last case.
judges: Paul V. Niemeyer, Roger L. Gregory, Nicole G. Berner